UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DOW AGROSCIENCES LLC and THE )
DOW CHEMICAL COMPANY, )
       Plaintiffs, )
        )
   vs. )    1:10-cv-39-SEB-TAB
        )
COOPER INDUSTRIES, LLC,and )
COOPER POWER SYSTEMS, INC., )
       Defendants. )

## ENTRY DENYING DEFENDANTS' MOTION TO DISMISS

Plaintiffs, Dow Agrosciences LLC and The Dow Chemical Company (collectively "Dow"), have produced a product which they intend to market as a dielectric fluid. The product is a vegetable oil, more specifically a high oleic canola oil augmented with an anti-oxident additive. For many years Dow has marketed this same canola oil without the anti-oxident additive as a food product known as Omega-9 and branded it under a variety of names.

Defendants, Cooper Industries, LLC and Cooper Power Systems, Inc. (collectively "Cooper"), own certain patents covering the use of vegetable oils as dielectric fluid in transformers and other electrical equipment. Dow approached Cooper in December 2008 to discuss Dow's plan to sell a vegetable oil-based dielectric fluid. Dow believed that, Cooper's patents either did not apply to Dow's canola oil product or that some of the patent claims were invalid, but sought to discuss these issues with persons responsible for

Cooper's intellectual property interests. After Cooper sent a message to Dow on January 15, 2009, stating that it was open to discussions with Dow, a web teleconference was set for January 26, 2009. During that web teleconference, Dow discussed the patents held by Cooper and explained its reasons for believing that the patent claims did not apply to Dow's product or why they were invalid. Dow also provided Cooper with the important fixed properties of its high oleic canola oil, such as the oil's viscosity measurements, its fire point and its dielectric breakdown point. At the conclusion of the conference, Dow requested that Cooper consider providing Dow with immunity from suit for its canola oil-based dielectric fluid.

Two days after this initial web-based conference, Cooper proposed a second conference to occur on February 19, 2009. But, on February 18, 2009, Cooper sent an e-mail to Dow indicating that, after a careful legal review, it could not agree with Dow either as to the viability or validity of its patents. Cooper added that it was open to further discussions in hopes of reaching an amicable resolution of their dispute.

On February 27, 2009, Dow requested from Cooper some proposed dates for their continued discussions. When Cooper responded that it would be unable to meet until the week of March 23, 2009, Dow promptly responded offering several dates from which Cooper chose March 27, 2009. On March 24, 2009, Cooper sent an e-mail to Dow indicating that its legal department had other commitments and could not meet again with Dow representatives until April 15, 2009.

On March 29, 2009, Cooper again postponed the impending meeting with Dow, suggesting a new date of April 23, 3009.  That date was scrapped on April 6, 2009, when Cooper contacted Dow to indicate it would not participate in any further meetings with regard to the canola oil-based dielectric fluid.  A June 12, 2009 letter from Cooper's General Counsel to Dow's General Counsel confirmed that Cooper was denying Dow's request for immunity.  That letter mentioned that Cooper had sued another party, ABB, on several of the same patents and reached a settlement which did not allow ABB to have any of its products manufactured by a third-party; it concluded, stating that Cooper "wish[es] to formally put Dow on notice that Cooper will vigorously defend its rights should Dow attempt to make products covered by one or more of Cooper's patents."

Dow filed this lawsuit on January 12, 2010, seeking a declaration of noninfringement or invalidity with respect to each of ten patents held by Cooper.  Cooper responded, in part, by filing its own lawsuit in state court in Texas.  Cooper has not seen or tested Dow's canola oil-based product and the product has not yet been brought to market.  Cooper claims that there is no concrete and immediate case or controversy that would support federal jurisdiction or warrant this Court's issuance of a declaratory judgment.

## *Discussion*

Article III of the U. S. Constitution and the Declaratory Judgment Act require an

"actual controversy" in order for a federal court to have jurisdiction to declare the "rights and other legal relations" of any interested parties. 28 U.S.C. § 2201(a). The "actual controversy" requirement, as it applies in a patent infringement scenario, was examined most recently by the Supreme Court in *MedImmune Inc, v. Genentech, Inc.*, 549 U.S. 118 (2007).

The *MedImmune* case involved a drug, Synagis, used to prevent respiratory tract diseases in children. *Id*. at 121. MedImmune, which manufactured and sold Synagis, had agreed to a license fee, to be paid in the form of royalties to Genentech, for the inclusion in Synagis of an antibody which was embodied in a patent owned by Genentech. *Id.* The license also covered a pending patent for "the coexpression of immunoglobulin chains in recombinant host cells." *Id*. Later, when the pending "coexpression" patent matured, Genetech wrote to MedImmune to inform it that it expected MedImmune to start paying additional royalties on the new patent. *Id*. MedImmune did not view the "coexpression" patent as valid or enforceable, nor did it believe that Synagis had infringed upon the patent. *Id.* at 121-122. Rather than refuse to pay the royalty and face potential treble damages and be enjoined from the sale of Synagis in an infringement

action, MedImmune paid the additional royalties under protest while simultaneously

seeking a declaratory judgment in federal court. *Id*. at 122.

At the district court level, Genentech challenged MedImmune's right to seek a declaratory judgment as to whether Synagis had infringed on Genentech's "coexpression" patent, arguing that no case or controversy existed and, hence, no subject matter jurisdiction, because a patent licensee who is up to date on its license payments could never be sued by the licensor for patent infringement. *Id*. The district court agreed and dismissed MedImmune's declaratory judgment claims, which dismissal was upheld by the Federal Circuit Court of Appeals. *Id*.

On review of those decisions, the Supreme Court reaffirmed its earlier view regarding the manner in which a court is to discern whether the case and controversy requirement for a declaratory judgment has been met, stating:

> In *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941), we summarized as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Id.* at 137. The Supreme Court opinion continued stating that, were it not for the license payments, there would be no question that the standard had been met. *Id*. at 138. Even though the license payments seemed to have thwarted the existence of a substantial controversy, the Supreme Court held, where a plaintiff's avoidance of imminent injury (such as the treble damages that would accompany a successful enforcement action) is

prompted by the threat of a patent enforcement action, the payment of license fees under an agreement does not nullify the concreteness of the controversy nor does it amount to a *de facto* settlement of the dispute. *Id.* at 129, 135.

Subsequent to the *MedImmune* decision by the Supreme Court, the Federal Circuit handed down a decision in *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377 (Fed.Cir. 2010), affirming the district court's dismissal of a declaratory judgment action which had been brought by a medical product manufacturer seeking a judicial declaration that a product it intended to market did not infringe upon patents held by another manufacturer. The Federal Circuit determined in *Innovative Therapies* that the "totality of circumstances" standard endorsed in *MedImmune* had not been satisfied and therefore no case or controversy existed to support an exercise of subject matter jurisdiction. In the case before us, Cooper relies heavily on the *Innovative Therapies* decision in seeking the dismissal of Dow's First Amended Complaint.

In *Innovative Therapies*, plaintiff responded to defendant's motion to dismiss by identifying several factors which, considered together under the "totality of circumstances" test, it believed created a specific and a concrete dispute sufficient to support an exercise of subject matter jurisdiction under the Declaratory Judgment Act. *Id.* at 1379. The factors identified included: (1) defendant's alleged knowledge that plaintiff had applied to the FDA for approval of its device on the grounds that it contained the same technological characteristics as one of the defendant's devices; (2) defendant's

prior prosecution of enforcement litigation against another manufacturer over the patents covering that same product; (3) telephone conversations between employees of plaintiff and employees of defendant whom the plaintiffs' employees knew, during which defendant's employees opined, when asked, that defendant would act aggressively if the plaintiff brought its product to market; and, (4) defendant's lawsuit against plaintiff brought after plaintiff filed its declaratory judgment action. *Id*. at 1380-84.

The Federal Circuit examined each of these factors on appeal, deciding that: (1) representations to a third-party such as the FDA do not establish a justiciable controversy; (2) defendant's prior litigation history was relevant but not particularly important, given that it had not seen the product at issue or made any accusations of infringement; (3) informal telephone discussions between employees of the parties did not produce a controversy of such immediacy as to require the district court to accept jurisdiction; and (4) subsequent actions of defendant lack any bearing on the existence of an immediate controversy at the time the lawsuit was filed. *Id*. Cooper contends that the analysis employed by the Federal Circuit in affirming the district court's dismissal in *Innovative Therapies* would, if applied here, result in a dismissal of this case. We disagree, concluding that dismissal of Dow's First Amended Complaint is not warranted.

Unlike the circumstances in *Innovative Therapies*, Dow went directly to Cooper and its team of patent experts in making its claim that Cooper's patents were invalid or the patents did not apply to Dow's canola oil-based product. There is no issue, therefore,

as to whether Cooper had knowledge of Dow's intent to introduce the product at the time Dow filed this declaratory judgment action. Not only did Cooper have knowledge, it had been provided by Dow with the key attributes and ingredients of the product in order for them to conduct an infringement analysis.[1] Further, Dow's interaction with Cooper was mot limited to informal phone calls among various employees. A meeting was held between representatives of Dow and Cooper, after which the parties agreed to meet again. There was as well a direct exchange of information between the companies through e-mails.

While we agree with Cooper that its filing of the state court lawsuit occurring subsequently to this lawsuit bears little or no relevance to the issue of whether a case and controversy existed at the time this lawsuit was filed, we reject its argument that it had done nothing to signal that from Dow's viewpoint litigation was an imminent threat. Under the circumstances at the time, which according to the Supreme Court directive is to be the focus for our analysis, the only way Cooper's letter to Dow could have been more direct would have been if it had stated, "We will sue you if you bring the product to market." Such a direct threat is not required; it is enough to tell an opposing party that

---

[1]Cooper makes much of the fact that it did not have a sample of the Dow product and thus could not have made a proper analysis of its potential infringement. However, two facts suggest that this argument is a red herring. First, in addition to Cooper's having been provided with key properties of the product, a sample of the vegetable oil could have been obtained by purchasing it through food product distributions channels. Second, Cooper's actions in requesting or agreeing to successive meetings followed in each instance with a cancellation suggests that a sufficient analysis had been conducted to warrant the issuance of a warning to Dow that it had litigated these patents in the past and was not afraid to do so again in the future.

your patents, in your opinion, include the subject invention and you intend to vigorously enforce them. Obviously, enforcement of the patents will occur only if a lawsuit is brought to curtail an infringement.

The Supreme Court requirement that "all the circumstances" be considered in determining whether a substantial controversy exists is our touchstone here. *MedImmune,* 549 U.S. at 126. In that regard, the totality of circumstances reflects the existence of a real dispute affecting the rights of both Dow and Cooper as of the time this lawsuit was filed.

Cooper requests that we nonetheless reject Dow's attempt to obtain a declaratory judgment, as an exercise of judicial discretion. It is true that 28 U.S.C. § 2201(a) includes the term "may" in describing the court's obligation to declare the rights of the parties to a dispute. However, Cooper's filing of the subsequent lawsuit in Texas gives us pause, suggesting as it does that this is not a dispute that might resolve itself in some manner without judicial intervention. That action by Cooper may not be relevant to a determination of whether a case or controversy existed at the time this lawsuit was filed, but it is relevant to our decision as to whether we should in our discretion deny Dow a judicial forum within which to seek a resolution to its dispute with Cooper. Accordingly, we shall not deny Dow's request for declaratory relief, and Cooper's Motion to Dismiss must be denied.

*Conclusion*

For the reasons explicated in this entry, Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. #50) is DENIED.

IT IS SO ORDERED.

Date: 07/29/2011

                                           SARAH EVANS BARKER, JUDGE
                                           United States District Court
                                           Southern District of Indiana

Copies to:

Thomas L Casagrande
LOCKE LORD BISSELL & LIDDELL LLP
tcasagrande@lockelord.com

Joseph Gregory Eaton
BARNES & THORNBURG LLP
joe.eaton@btlaw.com

Daniel C. Emerson
BOSE MCKINNEY & EVANS, LLP
demerson@boselaw.com


Donald E. Knebel
BARNES & THORNBURG LLP
donald.knebel@btlaw.com

Robert J. McAughan
LOCKE LORD BISSELL & LIDDELL LLP
bmcaughan@lockelord.com

George E. Purdy
BOSE MCKINNEY & EVANS, LLP

gpurdy@boselaw.com

Todd G. Vare
BARNES & THORNBURG LLP
todd.vare@btlaw.com

Craig L Weinstock
LOCKE LORD BISSELL & LIDDELL LLP
cweinstock@lockelord.com